64 F.3d 670
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Jeff SCOTT and Robin Harvey, Plaintiffs-Appellants,
v.
Patsy SCOTT, Defendant-Appellee.
 No. 94-6347.
 United States Court of Appeals, Tenth Circuit.
 Aug. 16, 1995.
 
 Before TACHA, LOGAN, and BRISCOE, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs Jeff Scott and Robin Harvey, stepchildren of defendant Patsy Scott, appeal the district court's order granting summary judgment in favor of Ms. Scott. We affirm.
 
 
 3
 When W.D. Scott, Ms. Scott's husband and plaintiffs' father, died, Ms. Scott received $1,075,000 in life insurance proceeds. By letters and personal communication, Mr. Scott had expressed his desire that Ms. Scott give each child $100,000.[2] Ms. Scott gave each plaintiff $20,000--$10,000 in cash and $10,000 in an irrevocable trust--but made no other payments. Plaintiffs then filed suit in state court seeking the remaining $160,000 they alleged was due them. Ms. Scott removed the suit to federal court on the grounds of diversity.
 
 
 4
 In granting summary judgment in favor of Ms. Scott, the court held that no contract existed between W.D. Scott and Ms. Scott, that Mr. Scott's communications with his wife and children had not created an express trust, and that Mr. Scott's request to Ms. Scott that she give a portion of the insurance proceeds to his children was insufficient to justify imposition of a constructive trust.
 
 
 5
 On appeal plaintiffs argue that Ms. Scott had agreed with Mr. Scott that she would give each plaintiff $100,000, and therefore the district court should have imposed a constructive trust on the funds.[3]
 
 
 6
 We review de novo the district court's grant of summary judgment, viewing "the evidence in the light most favorable to the nonmoving party." Repp v. Anadarko Mun. Hosp., 43 F.3d 519, 521 (10th Cir.1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A constructive trust is an involuntary or implied trust which arises by operation of law." Gazalski v. Goss (In re Estate of Ingram), 874 P.2d 1282, 1287 (Okla.1994).
 
 A court will impose a constructive trust
 
 7
 against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.
 
 
 8
 Cacy v. Cacy, 619 P.2d 200, 202 (Okla.1980); see also First Nat'l Bank & Trust Co. v. Coppin, 827 P.2d 180, 182 (Okla.Ct.App.1992) ("Constructive trust assumes that one party ... has title to certain property ... that another ... has a better right to."). In Oklahoma, constructive trusts are equitable remedies imposed primarily to avoid unjust enrichment. United States Dep't of Energy v. Seneca Oil Co. (In re Seneca Oil Co.), 906 F.2d 1445, 1450 (10th Cir.1990). "Unfairness" is not a sufficient reason to impose a constructive trust; the person against whom recovery is sought must have committed some active wrongdoing. Gazalski, 874 P.2d at 1287.
 
 
 9
 The person asserting a constructive trust has the burden of proving wrongdoing by "clear, unequivocal, and decisive evidence." Id.; see also Easterling v. Ferris, 651 P.2d 677, 681 (Okla.1982) (evidence of wrongdoing supporting imposition of constructive trust must be "clear, unequivocal and decisive beyond a reasonable doubt").
 
 The district court stated that:
 
 10
 Evidence of an explicit request by W.D. Scott that Patsy Scott give a portion of the insurance proceeds to his children is insufficient to justify imposition of a constructive trust. Rather, a constructive trust will be imposed only if Patsy Scott had been named beneficiary on the express condition that she give a certain amount to each child.
 
 
 11
 App. 245. The district court thus correctly required that plaintiffs produce evidence of wrongdoing, e.g., that Ms. Scott wrongfully kept money that she had promised (at least implicitly) to give to plaintiffs.
 
 
 12
 In urging that a constructive trust be imposed, plaintiffs rely on letters written by Mr. Scott to each of his children and to Ms. Scott. In the letters to his children, Mr. Scott stated that he had "asked" Ms. Scott to give each child $100,000, App. 4-5, although each child was not to receive the money outright. He also instructed each child as to how he wished them to handle the money.
 
 
 13
 Mr. Scott expressed the same desires to Ms. Scott as he had to the children. Id. at 87-88, 92-93. Mr. Scott concluded one of his letters to Ms. Scott with a section entitled "Things to Remember." Paragraph two of that section reads:
 
 
 14
 Rember [sic] that the things I have suggested are only suggestions. You have the right to make the decissions [sic] as to how you want things to go. You are plenty capable of making good decissions [sic]. I just want you to be provided for in the future and not to have to worry about finances. You should be able to live off of the intrest [sic] on your money and leave something for our children and grandchildren.
 
 
 15
 Id. at 88.
 
 
 16
 Contrary to plaintiffs' assertion, this paragraph logically applies to the entire letter and not just to items designated as suggestions. It indicates that Mr. Scott trusted Ms. Scott to make financial decisions in accordance with his primary concern that she "be provided for in the future." See id.; see also id. at 33 (Deposition of Dean Rogers (the Scotts' employee and friend) ("W.D. Scott's desire was ... to 'take care of Patsy in the event of his death.' ")). Ms. Scott was the sole beneficiary of the two $500,000 insurance policies. She was also the owner of one of those policies; the other was owned by a corporation of which she was the sole owner. Mr. Scott, an experienced insurance salesman, knew this when he acquired the policies or transferred them to her when he was in apparent good health.
 
 
 17
 Mr. Scott appears to have anticipated the insurance proceeds would be sufficient for Ms. Scott to provide for herself and also to make the monetary gifts to the children. In her deposition testimony, Ms. Scott asserted she had intended to carry out Mr. Scott's wishes, but when interest rates declined she felt she could not "comfortably" make the gifts. Id. at 189. She indicated she had intended to resume contributing to the trusts once interest rates rose. Id.
 
 
 18
 Plaintiffs produced ample evidence that Mr. Scott wanted Ms. Scott to give each plaintiff $100,000. However, plaintiffs have presented no direct evidence that Mr. Scott made the transfer of $100,000 to each plaintiff a condition to designating Ms. Scott owner and beneficiary. See Saak v. Hicks, 321 P.2d 425, 428 (Okla.1958). Although based on the record it is not beyond possibility that Ms. Scott promised Mr. Scott she would make the transfers, the evidence of such a promise or condition is certainly not "clear, unequivocal, and decisive." See Gazalski, 874 P.2d at 1287. Although it may seem unfair that plaintiffs do not receive money they feel they were promised by their father, " 'unfairness' is not reason enough to impose a [constructive] trust." Id.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The same gift was to be made to Ms. Scott's son, Jeff Cook, who is not a party to this suit
 
 
 [3]
 Because plaintiffs do not address the issues of express trust or contract we deem those issues waived. See State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 984 n. 7 (10th Cir.1994) (issues not raised in opening brief are deemed waived)